UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
In re:                                                     :
                                                           :         Chapter 11
    Symbiont.io LLC,                    :
                                                           :         Case No. 22-11620-PB
                        Debtor. :
---------------------------------------------------------- x

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on May 11, 2023, William K Harrington, United States Trustee, Region 2 (the "United States Trustee"), filed the *Motion, Pursuant to 11 U.S.C. § 1112(b), for an Order Converting this Case to One Under Chapter 7, or Alternatively, Dismissal* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "Hearing") on the Motion will be held on **June 1, 2023, at 10:00 a.m. (Eastern)**, or as soon thereafter as counsel can be heard, before the Honorable Philip Bentley, United States Bankruptcy Judge, United States Bankruptcy Court – Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York, 10004.

**PLEASE TAKE FURTHER NOTICE** that in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted via Zoom video conference. Parties wishing to appear at the Hearing must make an electronic appearance through the "eCourtAppearances" tab on the Court's website (https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl) no later than 4:00 p.m. on the business day before the Hearing (the "Appearance Deadline"). Following the Appearance Deadline, the Court will circulate by email the Zoom link to the Hearing to those parties who have made an electronic appearance.

**PLEASE TAKE FURTHER NOTICE** that any responsive papers to the Motion must be filed with the Court and served on the United States Trustee, Region 2, at Alexander Hamilton Custom House, One Bowling Green, New York, New York, 10004 (Attn: Annie Wells, Esq.), with copies to the Chambers of the Honorable Philip Bentley, United States Bankruptcy Judge, in accordance with applicable Chambers Rules, by no later than by 4:00 p.m. (Eastern) seven (7) days prior to the return date set forth above. Such papers shall conform to the Federal Rules of Civil Procedure and identify the party on whose behalf the papers are submitted, the nature of the response, and the basis for such response.

                                                       Respectfully submitted,

                                                       WILLIAM K HARRINGTON,
                                                       UNITED STATES TRUSTEE, REGION 2

By:    */s/ Annie Wells*
           Annie Wells
           Trial Attorney
           Office of the United States Trustee-NYO
           Alexander Hamilton Custom House
           One Bowling Green
           New York, New York 10004
           Tel. No. (212) 510-0500

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re:                                                       :
                                                             :   Chapter 11
    Symbiont.io, LLC,                     :
                                                             :   Case No. 22-11620-PB
                                              Debtor.        :
------------------------------------------------------------ x

# UNITED STATES TRUSTEE'S MOTION AND MEMORANDUM OF LAW, PURSUANT TO 11 U.S.C. § 1112(b), FOR AN ORDER CONVERTING THIS CASE TO ONE UNDER CHAPTER 7, OR ALTERNATIVELY, DISMISSAL

TO:    THE HONORABLE PHILIP BENTLEY,
         UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby moves this Court for the entry of an order, pursuant to 11 U.S.C. § 1112(b) (the "Motion"), converting the Chapter 11 case of Symbiont.io, LLC (the "Debtor" or "Symbiont") to one under Chapter 7 of the Bankruptcy Code, or in the alternative, dismissal.  In support thereof, the United States Trustee respectfully states as follows:

## INTRODUCTION

Since the inception of this case, the Debtor has repeatedly failed to meet its obligations under the Bankruptcy Code.  The Debtor has not filed a single Monthly Operating Report ("MOR") for the last 5 months – December of 2022, and January, February, March, and April of 2023 – and continues in these proceedings without any transparency or accountability to the Court, the United States Trustee, or other stakeholders.  It has not paid any quarterly U.S. Trustee fees, the timely payment of which is required under 28 U.S.C. 1930.  The Debtor has failed to provide evidence of the most basic safeguards of estate property: the establishment of a Debtor-in-Possession bank account.  Even with the cooperation of its sole secured creditor, LM

Funding America Inc. ("LMF"),[1] and the retention of Huron Consulting Services LLC ("Huron") and the designation of Laura Marcero ("Marcero") as the Debtor's Chief Restructuring Officer ("CRO"), the Debtor continues to break its promises to this Court to cure these deficiencies, and more. Accordingly, the Court should grant this Motion.

## RELEVANT FACTS

1. On December 1, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. ECF No. 1. Contemporaneous therewith, the Debtor also filed an unsigned Resolution of Symbiont's Board of Directors ostensibly authorizing the filing of the petition. ECF No. 1-1.

2. While the Debtor remains in control of its business and manages its assets as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, it is not operational.

3. As of the date hereof, no statutory committee of general unsecured creditors has been appointed in this case.

4. As of the Petition Date, the Debtor listed the value of the "proprietary computer code and algorithms" at $7.6 million. *See* Schedule A/B, Part 10. ECF No. 7.

5. On January 4, 2023, the United States Trustee convened a meeting of creditors pursuant to section 341 of the Bankruptcy Code (the "341 Meeting"). ECF No. 9. At the 341 Meeting, among other things, Mark Smith, the Debtor's CEO, testified that the Debtor had furloughed or terminated substantially all of its employees, including himself, and owed approximately $1.4 million in back wages. *See Declaration of Annie Wells in Support of United*

---

[1] LMF has asserted a secured claim against the Debtor in the amount of $2,470,023.21. *See* Cash Collateral Stipulation (defined below).

2

*States Trustee's Motion to Convert or Dismiss Chapter 11 Case* (the "Wells Decl.") ¶ 4 [Ex. A].

6. On December 20, 2022, LMF filed a *Motion for an Order to Lift the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Demand for Adequate Protection Pursuant to 11 U.S.C. 363(e)* (the "Stay Relief Motion"), to which the Debtor opposed. *See* ECF Nos. 10, 15.

7. Shortly thereafter, on January 3, 2023, one month after the Petition Date, the Debtor filed its own voluntary motion to dismiss (the "Motion to Dismiss"),[2] stating, *inter alia*:

> Here, there is cause to dismiss the case. As LMF contends in their motion for relief from the stay, the Debtor presently has no cash and as of the time of the making of this motion, the Debtor has not consummated a transaction with any potential source of financing for this case. As such, each day that the case is permitted to continue deepens the administrative burden faced by this Debtor. In the absence of financing, the Debtor cannot pay employees, cannot pay creditors providing services post-petition, and cannot afford to pay United States Trustee fees - all of which are required by the Bankruptcy Code. The Debtor is a melting ice cube lacking the ability to generate enough cold to hold itself together.

ECF No. 14, ¶ 29.[3]

8. On January 10, 2023, this Court conducted an initial status conference (the "Initial Status Conference"). On the eve of the Initial Status Conference, the Debtor filed a letter ("Jan. 9 Letter") [ECF No. 21], in which the Debtor advised the Court that:

> [A]fter the 341 meeting, the Debtor reached agreement with two customers on invoices issued in late December that will [*sic*] $370,000 for the estate in the next thirty days. While each customer previously indicated that it would need time to satisfy the invoices, each customer has now reversed course and each will be making payment as early as this week, but no later than end of month.
> More importantly, though, is that the Debtor today reached an agreement with a counterparty for a strategic transaction that will (i) resolve the Debtor's near-term liquidity needs, and (ii) create the path to a plan of reorganization that will pay all its creditors in full. Attached hereto as Exhibit B is a term sheet signed today between the Debtor and Morse Labs Inc. ("Morse") whereby Morse will acquire 66.67% of the equity interests in the Debtor.

---

[2] The Debtor requested that the Motion to Dismiss be heard on an expedited 7-days' notice, which request was denied. *See* ECF Nos. 14, 18.

[3] On January 18, 2023, the Debtor withdrew its Motion to Dismiss. ECF No. 26.

3

> In connection with this transaction, Morse has agreed to be the lead arranger for a $6 million financing facility. The first tranche of that financing (approximately $2,500,000) will be used by Morse to either acquire or permit the Debtor to repay LMF in full. In either case, Morse will be in a position to resolve LMF's debt by January 24, 2023. Far from a toothless promise, Morse has deposited 10% of the first tranche into Morrison Tenenbaum's client trust account as a show of good faith.

*Id.* at 1-2.[4]

9. At the conclusion of the Initial Status Conference, the Debtor and LMF reached a consensual resolution of LMF's Motion for Stay Relief. ECF No. 23. Among other things, the parties stipulated that "If Debtor is unable to consummate a transaction by the Funding Deadline sufficient to repay LMF the Repayment Funds, on January 25, 202[3] (*sic*), the Debtor consents to entry of an order lifting the automatic stay and agrees that Bankruptcy Rule 4001(a)(3) does not apply[.]" *Id.* at 6. The stay stipulation was so ordered and entered by the Court on January 13, 2023. ECF No. 25 (the "Stay Stipulation Order").

10. On January 24, 2023, the Debtor filed a second status report, in which it reported that it could not reach a deal with Morse Labs, and consented to lifting the stay in accordance with the terms of the Stay Stipulation Order. ECF No. 29.

11. On March 31, 2023, the Debtor and LMF filed a Joint Application to Employ Laura Marcero as Chief Restructuring Officer (the "CRO Retention Application"), seeking to retain Huron and Ms. Marcero as the Debtor's CRO, effective March 31, 2023. ECF No. 31. Contemporaneously therewith, the Debtor also filed a Stipulation Authorizing Use of Cash Collateral (the "Cash Collateral Stipulation"), seeking authorization to use Cash Collateral (as defined therein) pursuant to the terms set forth therein. ECF No. 32.

---

[4] The Debtor has never accounted to the Court or the United States Trustee as to the status of the $370,000 in receivables it was to receive from SWIFT SC and State Street Bank and Trust Co. Nor has Debtor ever explained what it did with the 10% good faith deposit from Morse Labs, allegedly placed into counsel's escrow. The Letter of Intent with Morse Lab was silent on the matter.

4

12. On April 18, 2023, the Court held a hearing (the "April Hearing") on the CRO Retention Application and Cash Collateral Stipulation. At that hearing, among other things, the Debtor represented to the Court that the retention of Huron and Ms. Marcero as Chief Restructuring Officer, and consensual use of LMF's Cash Collateral, would enable the Debtor to cure the deficiencies with respect to filing the outstanding Monthly Operating Reports and pay any outstanding quarterly U.S. Trustee fees. *See* Wells Decl. ¶ 7.

13. However, as of the date hereof, the Debtor has not filed a single Monthly Operating Report, nor paid any quarterly U.S. Trustee fees, which are currently outstanding in the amount of not less than $500. *See* Wells Decl. ¶¶ 5-6.

14. At the April Hearing, the Debtor and LMF were also directed by this Court to file, on notice to all parties, an updated Budget and timeline with respect to the proposed sale process and use of Cash Collateral. Notwithstanding the Court's directive, and the employment of the CRO for over three weeks now, the Debtor has not complied. *See* Wells Decl. ¶ 8.

15. On April 19, 2023, the Court so ordered the Cash Collateral Stipulation, which, as entered, provides that the Debtor's authority to use LMF's Cash Collateral terminated on May 8, 2023. ECF No. 48.

## DISCUSSION

Section 1112(b)(1) provides that the Bankruptcy Court "*shall* convert a case under this chapter to a case under chapter 7 . . . for cause[.]" 11 U.S.C. § 1112(b) (emphasis added); *see also In re New Rochelle Tel. Corp.*, 397 B.R. 633, 640 (Bankr. E.D.N.Y. 2008) (noting that "if the movant establishes that 'cause' exists to convert the case, it is the Court's obligation to dismiss or convert a Chapter 11 case" absent unusual circumstances); *In re Rubio*, No. 09-75163-AST, 2011 WL 124458, at *3 (Bankr. E.D.N.Y. Jan. 13, 2011) ("Section 1112(b)(1) provides

5

that once cause is established, the case shall be dismissed or converted unless the Court specifically finds unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate."). In turn, subsection 1112(b)(4) sets forth a list of "cause," including, as relevant here:

> (A)  substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (F)  unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>
> (H)  failure timely to provide information or attend meetings reasonably requested by the United States trustee; and
>
> (K)  failure to pay any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b)(4). However, "cause" to convert or dismiss is not limited to the expressly enumerated grounds under the statute, and "courts are free to consider other factors." *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010). *See also In re State Street Assoc., L.P.*, 348 B.R. 627, 639 (Bankr. N.D.N.Y. 2006) (noting that the list under section 1112(b) is illustrative, not exhaustive); *In re Ameribuild Constr. Mgmt., Inc.*, 399 B.R. 129, 131 n.3 (Bankr. S.D.N.Y 2009) ("The list contained in § 1112(b) is not exhaustive") (citation omitted); *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003) (same). *Cf. In re Tiana Queen Motel, Inc.*, 749 F.2d 146, 151 (2d Cir. 1984) (another ground for conversion not specifically referenced in 11 U.S.C. § 1112(b)(4) is "unreasonable delay by the debtor that is prejudicial to creditors").

Once the moving party establishes cause, the burden shifts to the debtor to demonstrate that dismissal or conversion is not in the best interest of the estate. *See In re Just Plumbing & Heating Supply, Inc.*, No. 11-10151 MG, 2011 WL 4962993, at *2 (Bankr. S.D.N.Y. Oct. 18, 2011) ("Once the movant has established cause, the burden shifts to the respondent to

6

demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." (quoting *Collier on Bankruptcy* ¶ 1112.05 [1] (16th ed. 2009)).

Each of the enumerated grounds, by itself, is sufficient to warrant conversion of this case. *See In re TCR of Denver, LLC*, 338 B.R. 494, 500 (Bankr. D. Colo. 2006). Here, as discussed below, all of these grounds are met, and the record is overwhelmingly clear that the Debtor cannot be allowed to remain in Chapter 11.

### I. Continuing Loss and No Reasonable Likelihood of Rehabilitation

Cause for conversion or dismissal exists when a movant can show a continuing loss to or diminution of the debtor's estate and an absence of a reasonable likelihood of rehabilitation. 11 U.S.C. §1112(b)(4)(A). *See also In re 1031 Tax Grp., LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007); *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y 2011). "A party seeking to demonstrate cause under § 1112(b)(4)(A) must establish both the 'substantial or continuing loss' prong as well as the 'absence of a reasonable likelihood of rehabilitation.'" *In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y 2009). "To determine whether there is a continuing loss or a diminution of the estate, a court must make a full evaluation of the present condition of the estate, not merely look at a debtor's financial statements." *In re AdBrite Corp.*, 290 B.R. at 215.

There need not be significant diminution to satisfy the first prong of section 1112(b)(4)(A). *See In re East Coast Airways, Ltd.*, 146 B.R. 325, 336 (Bankr. E.D.N.Y. 1992) ("There need not be a significant diminution in the estate to satisfy Section 1112(b)(2)."); *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988) ("All that need be found is that the estate is suffering some diminution in value."). One indication of continuing loss to the estate is the

7

"debtor's inability to meet the basic operating expenses critical to the viability of its enterprise, notwithstanding the protection of the automatic stay." *See Taub v. Taub (In re Taub)*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (*citing In re Schriock Constr., Inc.*, 167 B.R. 569, 575-76 (Bankr. D.N.D. 1994)). Regarding the second prong, the Debtor must "do more than manifest unsubstantiated hopes for a successful reorganization." *In re Gateway Access Solutions*, 374 B.R. 556, 562 (Bankr. M.D. Penn 2007) (*quoting In re Canal Place Ltd. P'ship*, 921 F.2d 569, 577 (5th Cir. 1991)). In other words, "[t]here must be a reasonable possibility of a successful reorganization within a reasonable time." *Id.* (*quoting United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988)). *See also Tennessee Publishing Co. v. American Nat'l Bank*, 299 U.S. 18, 22 (1936) (explaining that the court "is not bound to clog its docket with visionary or impracticable schemes for resuscitation."). In this case, both prongs are satisfied.

Here, the continuing loss to the estate is not disputed. First, the Debtor continues to incur the costs of administering the estate while it remains in Chapter 11, including counsel's legal fees,[5] professional fees of the CRO, and quarterly U.S. Trustee fees, and other administrative expenses such as bank fees or storage fees. But the Debtor has zero funds with which to meet any of its post-petition expenses. It has no DIP-financing, and even with LMF's consent to use Cash Collateral, the Debtor and LMF concede that the Debtor will run out of funds shortly,[6] and indeed, was administratively insolvent from day one.

Second, both the Debtor and LMF agree that the Debtor's sole significant asset – the

---

[5] Under the Cash Collateral Stipulation, $30,000 was budgeted for the fees of Debtor's bankruptcy counsel. However, as of the date hereof and more than five months into this case, the Debtor has not filed an application for the retention of bankruptcy counsel.

[6] The Debtor contends, in its motion seeking to shorten the notice period for a hearing on the proposed sale that it will run out of funds by June 5, 2023. *See* ECF No. 50 ¶ 9.

8

proprietary blockchain algorithm software – has already rapidly diminished in value because its salability is largely dependent on the availability of skilled employees and personnel to provide support services to the end users and licensees for its functionality, but that the Debtor has essentially discontinued operations and has no employees to support the software. The longer that the asset remains in this chapter 11 case, the faster it will suffer continued diminution in value. Conversion of the case will allow a Chapter 7 trustee to quickly monetize the software and provide a recovery to LMF and other estate creditors, in a cost efficient manner; particularly if the Chapter 7 trustee can continue the sale process that has already been laid by the CRO.

As to the second prong, there is no reasonable possibility of a successful reorganization within a reasonable time because there is simply no business to reorganize. The Debtor has already terminated all of its employees and officers, and the majority of the Debtor's Board of Directors have resigned. It is not currently operational. Indeed, the CRO's limited scope of services was to effectuate a sale of the Debtor's assets, not to reorganize the Debtor's business, or even formulate a liquidating plan for the benefit of the estate's numerous other creditors.

## II.  Unexcused Failure to File Monthly Operating Reports

The Debtor has not filed a single Monthly Operating Report since commencing Chapter 11. Pursuant to 28 U.S.C. § 586 and the United States Trustee Operating Guidelines (the "UST Guidelines"), the Debtor is required to *timely* file monthly operating reports by the 15th day of the following month.[7] Timely filed operating reports are critical to a transparent bankruptcy process and helps the estate's stakeholders, as well as the United States Trustee and Bankruptcy Court, to remain informed of the debtor's financial condition during the bankruptcy case. As one bankruptcy court has explained:

---

[7] *See* https://www.justice.gov/ust-regions-r02/file/region_2_operating_guidelines.pdf/download.

9

> Monthly operating reports provide necessary information to the Court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts. The requirement to file these reports on a timely basis, no later than [fifteen] days following the reporting period, assures that current information is regularly and easily available to anyone with an interest in monitoring the progress of a case toward confirmation. Late filings complicate this task, and missing filings may render it impossible.

*In re Babayoff*, 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011); *see also In re Adamo*, No. 14-73640 (LAS), 2016 WL 859349, at *19 (Bankr. E.D.N.Y. Mar. 4, 2016) (noting that monthly operating reports are "the life blood of chapter 11, enabling creditors to keep tabs on the debtor's post-petition operations. Failure to file them—and file them timely—is a serious breach of the debtor's fiduciary obligations and undermines the chapter 11 process.") (citations and internal quotation marks omitted).

The failure to file operating reports constitutes "cause" for dismissal under section 1112(b)(4)(F) of the Bankruptcy Code. *See In re Rey*, 2006 WL 2457435, at *9 (Bankr. N.D. Ill. Aug. 21, 2006) ("The failure of the Reys to submit timely operating reports is still further cause to convert or dismiss this case."); *In re Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991) (noting that the failure to file operating reports "in itself constitutes 'cause' for dismissal.") (citations omitted); *In re GEL, LLC*, 495 B.R. 240, 245 (Bankr. E.D.N.Y. 2012) (finding cause under section 1112(b) due, in part, to debtor's failure to file operating reports).

Here, the Debtor has been given more than five months to file its Monthly Operating Reports. Even with the services of a CRO and the use of Cash Collateral funds with the consent of LMF, the Debtor has broken its promise to the Court and the United States Trustee, and continues to fail to meet its duties as a debtor-in-possession under the Bankruptcy Code. The need for transparency and comprehensive operating reports is more critical than ever to the estate's creditors and stakeholders because LMF and the Debtor is proposing to conduct a sale of

10

substantially all of the Debtor's assets on an expedited basis, with little notice. There is zero financial information available, let alone sufficient time, for parties to evaluate the reasonableness of any proposed sale transaction, which has been presented as the only feasible means of proceeding and concluding this case, but which will provide no recoveries whatsoever to other creditors. The Debtor has no excuse – nor is any excuse permissible – for such blatant disregard of the bankruptcy process and principles of transparency.

### III.  Failure to Provide Information Requested by the United States Trustee

The creation of a bankruptcy estate upon the commencement of a Chapter 11 petition and the need to safeguard property of the estate is a fundamental tenet of bankruptcy. In that regard, UST Guidelines states:

> Immediately upon the filing of the Debtor's petition, the funds in the Debtor's existing accounts become property of the bankruptcy estate. All pre-petition bank accounts controlled by the Debtor must be closed immediately upon the filing of the petition, and the debtor shall immediately open new debtor-in-possession operating, payroll, and tax accounts at a United States Authorized Depository.

*Id.* ¶ 7. Further, the UST Guidelines clearly advises that: "Timely compliance with each of the following requirements is essential. Failure to comply may result in a motion to dismiss or convert this case to liquidation under Chapter 7, for the appointment of a Chapter 11 trustee or examiner, or for imposition of sanctions." *Id.* at 1.

The need to protect estate funds is not just required under the UST Guidelines, but also under the Bankruptcy Code. *See* 11 U.S.C. § 345 (providing that a debtor-in-possession may deposit or invest money of the estate, taking into account the safety of such deposit and that the entity with which such money is deposited must, inter alia, provide a bond in favor of the United States, and be subjected to certain conditions). A debtor's failure to comply with this basic requirement is grounds for dismissal or conversion under section 1112(b)(4)(H). *See In re H & S*

11

*Truck Stop Travel Plaza LLC*, 610 B.R. 431, 433 (Bankr. W.D.N.Y. 2019) (finding that, "under 11 U.S.C. § 1112(b)(4)(F) and (H), cause for dismissal arises from the debtor's failure to submit proof that it has opened a "debtor-in-possession" bank account as required by applicable operating guidelines."); *In re Spencerport Dev., LLC*, No. 14-21154 PRW, 2014 WL 6886637, at *3 (Bankr. W.D.N.Y. Dec. 4, 2014) (granting dismissal where debtor had failed to provide proof of a DIP account, and copies of its tax returns in the three months it had been in bankruptcy).

Despite several requests, the Debtor has not, to date, provided any evidence to the United States Trustee that it has even established a Debtor-In-Possession bank account at an authorized depository institution, in violation of the UST Guidelines and section 345 of the Bankruptcy Code. The Debtor's deliberate dereliction of its fiduciary duties and obligations should not be countenanced any further by this Court.

### IV. Failure to pay any fees or charges required under chapter 123 of title 28

The evidentiary record shows that the Debtor has not paid any quarterly fees due to the Office of the United States Trustee pursuant to section 1930(a)(6) of title 28 since the filing of this case. It is well established that the nonpayment of United States Trustee quarterly fees when due is a basis for dismissal or conversion of a debtor's Chapter 11 case. *See* 11 U.S.C. § 1112(b)(4)(K); *see also In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995) (finding that debtor's failure to pay quarterly fees, by itself, is cause to dismiss or convert case); *In re Hi-Toc Dev. Corp.*, 159 B.R. 691, 693 (Bankr. S.D.N.Y. 1993) (affirming bankruptcy court's conversion of chapter 11 case to one under chapter 7 where the debtor, among other things, failed to pay real estate taxes and United States Trustee quarterly fees).

Here, while the Debtor and LMF continue to benefit from bankruptcy protection, the use of judicial and executive resources, and monetization of the Debtor's assets through a Court

12

process, the Debtor remains delinquent on the payment of the quarterly U.S. Trustee fees, which are estimated to be in an amount of not less than $500 for the last quarter of 2022 and first quarter of 2023.

## CONCLUSION

Based upon the foregoing, the United States Trustee has established grounds under section 1112(b) of the Bankruptcy Code for dismissal or conversion of this case, whichever is in the best interest of creditors. Therefore, the Court must grant this Motion, unless the Debtor can demonstrate the existence of unusual circumstances against such relief. The United States Trustee respectfully submits that conversion is preferrable to dismissal as there may be additional value that can be realized from the sale of the Debtor's assets (beyond LMF's credit bid) for the benefit of the estate's other creditors.

WHEREFORE, the United States Trustee respectfully requests that the Court enter an order dismissing or converting this Chapter 11 Case to one under Chapter 7, and grant such other and further relief as may be deemed just and proper.

Dated: New York, New York
       May 11, 2023

Respectfully submitted,

WILLIAM K HARRINGTON
UNITED STATES TRUSTEE, REGION 2

By: /s/ *Annie Wells*
Annie Wells
Trial Attorney
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004
Tel. No. (212) 510-0500

13