**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                               :   Chapter 7
                                                    :
**SYMBIONT.IO, LLC,**                               :   Case No. 22-11620-pb
                                                    :
           Debtor.                  :
-----------------------------------------------------------------x

## ORDER AUTHORIZING
## TRUSTEE'S OMNIBUS *EX-PARTE* APPLICATION FOR AN
## ORDER PURSUANT TO FEDERAL BANKRUPTCY RULE 2004

Upon the *ex-parte* application dated September, 13, 2024 ("**Application**") of Yann Geron ("**Trustee**"), the chapter 7 trustee for the above-captioned debtor, Symbiont.io, LLC ("**Debtor**"), for an order ("**Order**"), pursuant to Bankruptcy Rules[1] 2004 and 9016, authorizing Trustee, without prejudice to the rights of the Examinees, to conduct the written or oral examination of, and demand the production of documents and/or electronic files from the Examinees related to the items set forth on the Document Request attached here as **Exhibit 1** to the Application and any further document requests as needed; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that the relief sought in the Application is in the best interest of the Debtor and its estate; and the legal and factual bases set forth in the Application having established just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore; it is hereby

**ORDERED**, that the Application is GRANTEDas set forth herein; and it is further

---

[1] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Application.

**ORDERED**, that each Examinee is hereby directed to (a) produce on a rolling basis, within the timing as set forth in the Application, which service may be effectuated by email, hand delivery, Federal Express, or overnight mail, all the Document Requests, and (b) produce witnesses for the examinations at the offices of Morrison Cohen LLP, 909 Third Avenue, 27th Floor, New York, New York  10022, Attn: Joseph T. Moldovan, Esq. and Heath D Rosenblat, Esq., symbiont@morrisoncohen.com; and it is further

**ORDERED**, that each Examinee is hereby directed to ensure that all documents and other information, including without limitation in any electronic format, requested in the Application or otherwise relevant to the Debtor, its acts, conduct, assets, liabilities, financial condition, and this chapter 7 case are properly maintained, are available for inspection, and are not destroyed; and it is further

**ORDERED**, that unless otherwise agreed to by Trustee, each Examinee shall have ~~fifteen (15)~~ **twenty (20) [PB 09.17.24]** days from the service of the subpoena to either (a) produce to Trustee, by and through his special litigation counsel, all responsive documents requested in Trustee's subpoena, other than those documents withheld under a claim of privilege; or (b) file with this Court an objection or response to the subpoena with a hearing promptly scheduled; and it is further

**ORDERED**, that unless otherwise agreed to by Trustee, if any of the Examinees withhold any documents from the production based upon a claim of privilege, that Examinee is directed to provide counsel for Trustee with a privilege log, within ~~fifteen (15)~~ **twenty (20) [PB 09.17.24]** days of the service of a subpoena on the Examinee; and it is further

**ORDERED**, that Trustee is authorized and empowered, under Bankruptcy Rules 2004 and 9016, to undertake the examination of each Examinee, and as necessary, to issue subpoenas to

2

compel the production of documents and the testimony of Examinees in connection with the administration of this chapter 7 case; and it is further

**ORDERED**, that if requested by Trustee in the subpoena, the Examinees are directed to submit to oral examination at the offices of Morrison Cohen LLP, 909 Third Avenue, New York, New York, 10022 (or such other location—including digitally—as the parties may mutually agree) upon reasonable notice and, absent other agreement with Trustee, in no event more than thirty (30) days) from the date of the service of a deposition subpoena upon an Examinee; and it is further

**ORDERED**, that service of a copy of this Order by hand or overnight delivery upon counsel of each Examinee, if counsel is known, or to each Examinee themselves shall be deemed due and sufficient service and Trustee need not serve any subpoena or other process in order to effectuate this Order; and it is further

**ORDERED**, that nothing herein shall limit the rights of the Examinees under applicable law to object to or oppose any subpoena Trustee may serve upon the Examinees; and it is further

**ORDERED**, nothing contained herein shall prejudice to Trustee's right to file a further application under Bankruptcy Rule 2004 and other applicable laws to seek additional document and/or electronic file productions and written or oral examination in this chapter 7 case; and it is further

**ORDERED**, all disputes concerning Rule 2004 Subpoenas, including objections thereto, that are not resolved by agreement of the parties may be raised only by letter brief to the Court not exceeding five pages, single spaced. The other party shall file a responsive letter brief within three business days, which shall not exceed five pages, single spaced. Copies of such letter briefs shall also be emailed to the Court's chambers; and it is further

3

**ORDERED**, that this Court may retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of the Application and this Order.

Dated: New York, New York
      September 18, 2024

                                               /s/ Philip Bentley
                                               **Honorable Philip Bentley**
                                               **United States Bankruptcy Judge**

**Exhibit 1**

# REQUEST FOR DOCUMENT PRODUCTION

Examinee is requested to produce the following documents for inspection and copying at the offices of Morrison Cohen LLP, Special Litigation Counsel to Yann Geron, the Chapter 7 Trustee for Symbiont.io, Inc., located at 909 Third Avenue, 27th Floor, New York, New York, 10022, Attn: Joseph T. Moldovan, Esq. and Heath D. Rosenblat, Esq. or by e-mail at symbiont@morrisoncohen.com.

## Definitions

Pursuant to Rule 7026-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York, the uniform definitions and rules of construction set forth in Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York are incorporated fully herein.

1. The use of the present tense includes the past tense, the use of the past tense shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses. The singular includes the plural, and the plural includes the singular.

2. Terms used in the Document Requests (define below) but not otherwise defined shall have the meanings ascribed to them in the Application.

3. Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure ("**Federal Rules**") and the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

4. "**2021 Reorganization**" means the corporate reorganization that the Debtor under went on December 23, 2021.

5. "**and**" and "**or**" means interpreted in every instance as meaning "and/or" and shall not, in either instance, be interpreted disjunctively to exclude any document or information otherwise within the scope of any description or request herein.

6. "**any**" means one or more and is construed to mean "any and all" where the effect of such construction is to broaden the scope of the Document Requests.

7. "**Bankruptcy Code**" means §§ 101, *et seq.* of Title 11 of the United States Code.

8. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

9. "**Communication**" means the transmittal of information of any kind, in any form, and by any means, and therefore includes, but is not limited to, any telephone conversation, face to face meeting or conversation, visit, conference, internal or external discussion, or exchange of Documents (defined below). All written Communications shall include,

without limitation, electronic, printed, typed, handwritten or other readable Documents, correspondence, memos, reports, contracts, both initial and subsequent, diaries, logbooks, minutes, notes, studies, surveys, forecasts, emails, text messages, and instant messages. A Document Request (defined below) concerning any Communication among or between specified parties includes a request for any Communication among or between such parties, whether or not such Communication included or was directed to any other person.

10. **"Concerning," "regarding," "referring to," and "relating to"** (or an any variation thereof) each mean describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, regarding, controverting, contradicting, made in connection with or by reason of, or derived or arising therefrom.

11. **"Debtor"** means Symbiont.io, LLC.

12. **"Document(s)"** is defined to have the broadest meaning in scope to the usage of the term "documents or electronically stored information" in Federal Rule 34(a)(1)(A). Specifically, Federal Rule 34(a)(1)(A) provides:

> Any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form . . . .

Fed. R. Civ. P. 34(a)(1)(A). The term "**Document**" includes all originals, translations, non-identical copies, and copies with marginal notations or interlineations. A draft or non-identical copy is a separate Document within the meaning of this term. "Document" also includes all Electronically Stored Information (defined below).

13. **"Document Request"** or **"Request"** refers to the individual Requests for Production of Documents set forth in this Request.

14. **"Electronically Stored Information"** has the broadest possible meaning under Federal Rule 34 and refers to all computer or electronically stored or generated data and information and includes all attachments to and enclosures with any requested item, and all drafts thereof. "Electronically Stored Information" includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable. "Electronically Stored Information" includes: word-processing Documents; electronic spreadsheets; electronic presentation Documents; email messages; image files; sound files; and material or information stored in a database, or accessible from a database. "Electronically Stored Information" also includes all associated metadata that is maintained or saved, which includes: a Document's title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner;

3

identities of editors; identities of recipients; changes; history of changes; email header information; history of who viewed an email and when; and email routing information.

15. "**Examinee**" or "**Examinees**" means any person, company, corporation, limited liability company, partnership, sole proprietorship, or trust, the Document Requests were served upon, including, but not limited to, (a) Mark Smith; (b) Charles Ocheret; (c) Nathan Wells; (d) Kevin Wong; (e) Joseph Zicarelli; (f) Silvia Davi; (g) Thomas Dejarnette; (h) Dan Gallagher; (i) Duncan Niederauer; (j) Shivan Govindan; (k) Todd Rupert; (l) LMF; (m) Ranieri; (n) Morse; (o) Signature Bank; (p) Citibank, N.A.;

16. "**Include**" is construed to mean "including, but not limited to," where the effect of such construction is to broaden the scope of the Document Requests.

17. "**Insider**" has the meaning set forth in section 101(31) of the Bankruptcy Code.

18. "**Instructions**" refers to the instructions following this "Definitions" section of these Document Requests.

19. "**IP**" means recognized protectable rights and interests, such as patents, copyrights, trademarks, service marks, applications for any of the foregoing, inventions, trade secrets, trade dress, domain names, logos, insignia, color combinations, slogans, moral rights, right of publicity, author's rights, contract and licensing rights, works, industrial design rights, rights of priority, know how, design flows, methodologies, devices business processes, developments, innovations, good will, and all other legal rights protecting intangible proprietary information.

20. "**Ipreo Settlement**" means the $53 million settlement between Symbiont and Ipreo Holdings resolving litigation regarding the joint venture to create an alternative system operated by IHA Market Ltd.

21. "**LMF**" means LM Funding America Inc., Symbiont's sole secured lender.

22. "**Morse**" means Morse Labs Inc.

23. "**Mr. Smith**" means Mark Smith in his personal capacity, on behalf of the Debtor, or both as appropriate.

24. "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

25. "**Petition Date**" means December 1, 2022, the date the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

26. "**Professionals**" refers to individuals or entities engaged in specific occupations or fields of expertise that require specialized knowledge, training, and qualifications, and includes, but is not limited to, lawyers, attorneys, solicitors, barristers, accountants, investment bankers, financial advisors, consultants, and other licensed or certified practitioners, as well as any organizations, firms, or associations employing individuals in such occupations.

27. **"Ranieri"** means Ranieri Solutions LLC.

28. **"Transfer"** has the meaning set forth in section 101(54) of the Bankruptcy Code.

29. **"Trustee"** means Yann Geron, serving in his capacity as Chapter 7 Trustee of Symbiont.io, Inc.

30. **"You"** or **"Your"** means and refers to the Examinee responding to any particular Document Request and any other Person acting on behalf of the foregoing.

## Instructions

1. **Definition Inclusion.** The preceding Definitions apply to these Instructions and each of the succeeding Document Requests.

2. **Review.** In responding to each Document Request, You are to review and search all relevant files of the appropriate person or entity and answer each Document Request.

3. **Production Period.** Unless otherwise stated, each Document Request calls for production of Documents from the period starting six (6) years before the Petition Date through present.

4. **Manner of Production.**

   a. All Documents shall be produced in an orderly manner (and with appropriate markings or other identification) so that Trustee will be able to identify: (i) the source of the Document; (ii) the file in which the Document is or was maintained; (iii) the person to whom such file belongs or belonged; and (iv) the specific Document Request to which the Document is responsive. In responding to the Document Request, set forth the Request in full before providing the response and specify the particular Bates range responsive to each individual Document Request.

   b. You shall produce all Documents in the manner in which they are maintained in the ordinary course of Your business. A request for a Document shall be deemed to include a request for any file folders within which a Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to a Document in addition to the Document itself.

   c. Excel or equivalent spreadsheets shall be produced in native format with cell data and formulas populated. Where a native file is in color, the corresponding .pdf and .tiff files shall also be in color. All imbedded sound files shall be produced.

   d. Documents should be produced with only one data load file ("**DAT**") and one image pointer file ("**OPT**"). All document family groups, i.e. email attachments (including modern attachments), embedded files, etc., should be produced

5

together and children files should follow parent files sequentially in the Bates numbering. All members of the family have the same group identifier (which means it repeats for all records in the group) this identifier is populated in the PRODBEGATT field. All productions should be globally de-duplicated unless otherwise agreed upon by the parties. If You are producing iMessages, Short Message Service files or instant messenger services such as but not limited to: Slack, Signal, Discord, Microsoft Teams, Telegram, Text messages (MMS, SMS, iMessage, Whatsapp), Google Chat, Bloomberg Chat, Instagram, they should be produced with the entire conversation and the family group as one file or produced no smaller than by day (24-hour period) ensuring that the entire conversation thread is maintained in a family group. We request that for time zone consideration; normalization of the date and time stamps of all ESI data to the specific zone of UTC unless otherwise agreed upon by the parties.

5. **Delivery Format.** The following delivery format should be followed:

   a. Black and white images must be 300 DPI Group IV single-page TIFF files. Color images must be produced in JPEG format.

   b. All image files must have a unique file name. There should be no gaps in the image set.

   c. The number of TIFF files per folder should not exceed 500 files.

   d. Some document types will not be imaged for production unless redactions are applied, i.e. spreadsheets those documents should be produced in native format with a slip-sheet included with the image collection indicating, "Document Produced in Native Format", titled after the PRODBEG of the native files, there should be no gaps in the image collection.

   e. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media. Native file documents must be named per the first bates number. The full path of the native file must be provided in the .DAT file for the NATIVELINK field. The number of native files per folder should not exceed 500 files.

   f. Each page of every document should be endorsed with the bates number on the lower right corner of each page of the document.

   g. If documents require an additional endorsement, the additional endorsement should be placed in the lower right corner of each page of the document.

   h. The export will include the following load files: DAT and OPT files

      i. The data file (.DAT) contains all of the fielded information that will be loaded into the Relativity® database. The first line of the .DAT file must be a header record identifying the field names. The .DAT file must use the following Concordance® default delimiters:

6

    (a) Comma ASCII character 20; (b) Quote þ ASCII character 254; and (c)Newline ® ASCII character 174.

  ii. Date fields should be provided in the Date/Time format, i.e. 05/28/2016 7:11 AM. Dates must be in a valid format. For example, 01/00/2000 or 00/00/0000 are **not** valid dates.

  iii. The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

i. Text must be produced as separate document-level text files, **not** as fields within the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. The TEXTPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the ProdBeg. <u>PLEASE DO NOT include the text in the .DAT file</u>.

j. If any Document responsive to any Document Request is no longer in Your possession, custody, control or care, state whether the Document: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred voluntarily or involuntarily to others; or (iv) has been otherwise disposed of or discarded. In each such situation, set forth the facts surrounding such disposition, identify the person(s) directing or authorizing the disposition, and list the disposition date.

6. **Metadata.** All Documents shall be produced with metadata, including:

  PRODBEG
  PRODEND
  PRODBEGATT (BegAtt and EndAtt fields must be two separate fields.)
  PRODENDATT (BegAtt and EndAtt fields must be two separate fields.)
  CUSTODIAN
  ALL CUSTODIANS
  DOCTYPE
  PARENT DATE/TIME – this field is an aggregated date field which is harmonized and carried down through all attachments and family members.
  FROM
  TO
  PARTICIPANTS
  CC
  BCC
  SUBJECT
  SENT DATE/TIME
  RECEIVED DATE/TIME
  CREATED DATE/TIME
  LAST MODIFIED DATE/TIME

        BEGIN DATE – Populated for any short messages produced
        END DATE – Populated for any short messages produced
        CHAT TYPE
        TIMEZONE
        FILENAME
        ORIGINAL FILE PATH
        FILE EXT
        AUTHOR
        REDACTED – Populated with a value (i.e. Redacted, Has Redactions or Y) when the document has a redaction
        FILESIZE
        MD5HASH
        MESSAGEID
        ConversationThreadID
        PageCount
        PROD_VOLUME

7. **Withholding Information**. Any Document withheld from production based on privilege or any similar claim shall be identified by: (a) the type of document; (b) the general subject matter of the Document; (c) the date of the Document; and (d) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document, and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth.

8. **Deleted or Destroyed Documents.** If any Document responsive to any Document Request has been lost, removed, destroyed, or altered prior to the service of this Request, produce for each such Document: (a) a description of the Document to the extent known, and the last time and location that the Document is known or believed to have existed; (b) the date, sender, recipient and other Person(s) to whom copies were sent, subject matter, present location, and location of any copies; and (c) the identity of any Person authorizing or participating in any removal, destruction, or alteration of the Document, and the method and circumstances of such removal, destruction, or alteration

9. **Scope and Possession, Custody, or Control.** The information requested herein is not restricted to Your personal knowledge, but includes information in the custody, control, or possession of or available to any of Your agents, representatives, and/or Professionals. Persons responding to these Document Requests on Your behalf are directed to make a diligent search of all records within Your possession, custody, or control, including Your Documents that are paper files and Electronically Stored Information. You are required to produce the originals or legible exact copies of all Documents described in the Document Request in Your actual or constructive possession. Documents attached to each other should not be separated. To the extent that a Document Request calls for more detailed information than is available, respond to such Document Request by providing all responsive information that is available and an explanation of why the remaining information is not available to You. If any Information that relates to the scope of these Document Requests is no longer in Your possession, custody, or control because it has been returned to an individual or entity, please provide the following regarding the Document: (a) the place, date (or approximate date), and manner of recording or otherwise preparing of the

Information; (b) the name and title of sender, and the name and title of the recipient of the Information; (c) a summary of the contents of the Information; (d) the identity of each person or persons (other than stenographic or clerical assistance) participating in the preparation of the Information; (e) the identities of all persons having knowledge of the substance of the Information; (f) the date on which the Information was returned; (g) the reason it was returned; and (h) whether the claimed return occurred as a result of any policy relied upon by You (and if so, describe and provide a copy of the policy). If there are no Documents in Your possession, custody, or control that are responsive to a Document Request, state so with particularity in writing. A negative response to a Document Request will be understood to be a representation that You have no responsive information in any lesser detail.

10. **Preservation**. You are required to preserve and maintain any Documents that are related to the subject matter of the Document Requests, regardless of whether You deem them responsive to the Document Requests. You shall instruct Your employees, contractors, Professionals, and agents to do the same and shall take steps to ensure that they fulfill these obligations.

11. **Continuation and Further Production.** The Document Requests are continuing in nature. You are required to supplement Your responses as You obtain further information relating to Your answers. If at any time additional Documents responsive to any Document Request comes into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to the Document Request is required. Trustee reserves the right to request additional Documents, as needed, and to submit additional or supplemental requests, provided, further, that it expressly reserves its rights to supplement or amend the Document Requests.

12. **Objections**. If You object to any part of any Document Request, You shall state fully the nature of the objection. Notwithstanding any objections, You shall nonetheless comply fully with the other parts of the Document Request not objected to.

*Document Requests follow on the next page.*

9

**Document Requests**

*I.    Financial Institution*

1. Any Documents or Communications in Your possession, control, or custody regarding a list of the Debtor's financial accounts, including, bank accounts, investment accounts, credit card accounts, employee pension plans, or trust accounts. This request includes creating a list of such financial accounts.

2. A list of financial accounts in Your possession, control, or custody, including, bank accounts, investment accounts, credit card accounts, employee pension plans, or trust accounts.

3. Any applications to open an account held by You in the Debtor's name, together with any associated signature cards and authorizations.

4. Any applications to open an account held by You, together with any associated signature cards and authorizations.

5. Any bank statements in Your possession, control, or custody for checking, savings, or investment accounts bearing the Debtor's name, any other account held in the Debtor's name, or any account controlled by the Debtor, including any associated signature cards and authorizations.

6. Any bank statements in Your possession, control, or custody for checking, savings, or investment accounts bearing Your name, any other account held by You, or any account controlled by You, including any associated signature cards and authorizations.

7. Copies of the front and back of all cancelled checks in Your possession, control, or custody from checking accounts bearing the Debtor's name, any other account held in the Debtor's name, or any account controlled by the Debtor.

8. Copies of the front and back of all cancelled checks in Your possession, control, or custody from checking accounts bearing Your name, any other account held by You, or any account controlled by You.

9. Copies of all checks deposited, along with deposit slips, in Your possession, control, or custody from any account held in the Debtor's name, any other account in the Debtor's name, or any account controlled by the Debtor.

10. Copies of all checks deposited, along with deposit slips, in Your possession, control, or custody from any account held by You, any other account held by You, or any account controlled by You.

11. Any Documents and Communications in Your possession, control, or custody containing proof of incoming and outgoing wire transfers from any account held in the Debtor's name, any other account in the Debtor's name, or any account controlled by the Debtor.

12. Any Documents and Communications in Your possession, control, or custody containing proof of incoming and outgoing wire transfers from any account held by You, any other account held by You, or any account controlled by You.

13. Any Documents or Communications in Your possession, control, or custody regarding a list of assets the Debtor held, possessed, controlled, or had in its custody, including cash, cash equivalents, digital assets, licenses, and domain names, and any analysis, collateral valuations, pledge agreements, or other supporting documents concerning such assets. This request includes creating a list of such assets.

14. A list of all assets You hold, possess, control, or have in Your custody, including cash, cash equivalents, digital assets, licenses, and domain names, and any analysis, collateral valuations, pledge agreements, or other supporting documents concerning such assets.

15. Any Documents or Communications in Your possession, control, or custody regarding a list of the Debtor's financial accounts including bank accounts, investment accounts, credit card accounts, employee pension plans, or trust accounts, which hold or held assets transferred by the Debtor to that account. This request includes creating a list of such accounts and identifying the transfers \ from each account.

16. Any Documents or Communications in Your possession, control, or custody regarding a list of financial accounts of Insiders, including Mr. Smith, in Your possession, control, or custody, that holds, possesses, controls, or has in their custody, including bank accounts, investment accounts, credit card accounts, employee pension plans, or trust accounts, which hold or held assets transferred by the Debtor to that account. This request includes creating a list of such accounts with the relevant Insider's name and identifying the transfers from each account.

## II. *Transfers*

17. Any Documents or Communications in Your possession, control, or custody regarding any transfer at or exceeding $5,000, including checks, deposit receipts, or wire receipts, from the Debtor to or for the benefit of any Insider, including Mr. Smith. This request includes Documents or Communications regarding the Debtor's payments of:

   a. $1,689,014.92 to Mark Smith for alleged salary, guaranteed payments per offer letter, and expense reimbursement loan repayment;

   b. $720,000 to Joseph Zicarelli for alleged salary, guaranteed payments per offer letter, and expense reimbursement loan repayment;

   c. $351,000 to Charles Ocheret for alleged salary and expense reimbursement;

   d. $310,000 to Silvia Davi for alleged salary and expense reimbursement;

   e. $301,000 to Nathan Wells for alleged salary and expense reimbursement;

11

    f. $277,000 to Kevin Wong for alleged salary and expense reimbursement;

    g. $257,000 to Tomas Dejarnette for alleged salary and expense reimbursement; and

    h. $218,363.56 to Duncan Niederauer for an alleged loan capital repayment.

18. Any Documents or Communications in Your possession, control, or custody evidencing the use of the Debtor's assets by an Insider outside of their capacity as a representative of the Debtor.

19. Any Documents or Communications in Your possession, control, or custody evidencing Your use of the Debtor's assets.

20. Any Documents or Communications in Your possession, control, or custody regarding any transfer at or exceeding $5,000 in value, including checks, deposit receipts, or wire receipts, from the Debtor to or for the benefit of an Insider.

21. Any Documents or Communications in Your possession, control, or custody regarding any transfer at or exceeding $5,000 in value, including checks, deposit receipts, or wire receipts, from the Debtor to or for the benefit of You.

22. Any Documents or Communications in Your possession, control, or custody regarding any transfer at or exceeding $5,000 in value, including checks, deposit receipts, or wire receipts, from the Debtor to or for the benefit of a lender or potential lender. This request includes any transfer to LMF or Morse.

23. Any Documents or Communications in Your possession, control, or custody regarding any transfer at or exceeding $5,000 in value, including checks, deposit receipts, or wire receipts, to or from You to or for the benefit of a lender or potential of the Debtor. This request includes any transfer to LMF or Morse.

24. Any Documents or Communications in Your possession, control, or custody regarding any transfer at or exceeding $5,000 in value, including checks, deposit receipts, or wire receipts, to or from You to or for the benefit of a customer of the Debtor. This request includes any transfer of assets to Ranieri.

25. Any Documents or Communications in Your possession, control, or custody regarding any transfer at or exceeding $5,000 in value, including checks, deposit receipts, or wire receipts, from the Debtor to or for the benefit of third-parties outside of the ordinary course of business. This request includes the Debtor's donation to Lukasz Dobrek (an employee) $9,723.38 for supplies given to employee located in Poland for contribution to Ukraine efforts.

26. Any Documents or Communications in Your possession, control, or custody regarding any transfer at or exceeding $5,000 in value, including checks, deposit receipts, or wire receipts, to or from You to or for the benefit of third-parties outside of the Debtor's ordinary course of business.

12

### III.     *Assets and Use of Assets*

27.     Any Documents and Communication in Your possession, control, or custody regarding a list of all interests the Debtor owns or owned in other entities. This request includes identifying the interest and the percent of the interest. This requests includes creating a list of such interests.

28.     A list of all interests You own or owned in other entities. This request includes identifying the interest and the percent of the interest.

29.     Any Documents and Communication in Your possession, control, or custody regarding a list of all IP the Debtor owns and licenses out. This request includes identifying the asset and the user. This requests includes creating a list of such IP.

30.     A list of all IP You own and license out. This request includes identifying the asset and the user.

31.     Any Documents and Communication in Your possession, control, or custody regarding a list of all IP the Debtor licenses. This request includes creating a list of such IP and identifying the licensed asset and the owner on said list.

32.     A list of all IP You license. This request includes identifying the licensed asset and the owner on said list.

33.     Any Documents or Communications in Your possession, control, or custody concerning assets owned by an Insider and used by the Debtor including IP. This request includes identifying the asset and the owner.

34.     Any Documents or Communications in Your possession, control, or custody concerning assets owned by You and used by the Debtor including IP. This request includes identifying the asset and the owner.

35.     Any Documents or Communications in Your possession, control, or custody concerning assets owned by Morse and used by the Debtor including software licenses, general licenses, patents, copyrights, trademarks, or trade secrets. This request includes identifying the asset.

36.     Any Documents or Communications in Your possession, control, or custody concerning assets owned by Ranieri and used by the Debtor including software licenses, general licenses, patents, copyrights, trademarks, or trade secrets. This request includes identifying the asset.

37.     Any Documents or Communications in Your possession, control, or custody concerning the Debtor's use of the Ipreo Settlement proceeds. This request includes communications and projections regarding the distribution of the settlement proceeds, including who determined the liabilities to be paid by the settlement proceeds [and why payroll and LMF were left unpaid].

13

38. Any Documents or Communications in Your possession, control, or custody concerning if You received Ipreo Settlement proceeds and the flow of fund regarding Your use of the Ipreo Settlement proceeds received. This request includes wire transfers, account balances, and receipts.

## IV. *Litigation, Failed Transactions, and Other Liabilities*

39. Any Documents or Communications in Your possession, control, or custody concerning Mr. Smith's, or any other Insider's personal obligations to the Debtor, including all Documents (including financial statements, receipts, or wire transfers) and Communications, including communications among counsel for the same.

40. Any Documents or Communications in Your possession, control, or custody concerning negotiations and transactions between Morse and the Debtor, including all Documents (including licensing agreements, letters of intent, receipts, or wire transfers) and Communications, including communications (a) among counsel for the same; (b) between Mr. Smith and Morse; and (c) Shivan Govindan and Morse.

41. Any Documents or Communications in Your possession, control, or custody concerning Morse's obligations to the Debtor, including all Documents (including financial statements, receipts, or wire transfers) and Communications, including communications among counsel for the same. This request includes Information regarding the unbilled $1.25 million in work completed by the Debtor for Morse.

42. Any Documents or Communications in Your possession, control, or custody concerning negotiations and transactions between You and Morse, including all Documents (including funding summaries and valuations for each fund, loan agreements, service agreements, licensing agreements, invoices, and capital tables) and Communications, including communications among counsel for the same. This request includes the history of relationship and status of deliverables and any contract terminating such history.

43. Any Documents or Communications in Your possession, control, or custody concerning any contemplated special-purpose acquisition company deals by the Debtor including all Documents (including letters of intent, term sheets, or security agreements) and Communications, including communications among counsel for the same. This request includes information regarding the failed transactions with LMF and Ranieri.

44. Any Documents or Communications in Your possession, control, or custody concerning any contemplated special-purpose acquisition company deals between You, the Debtor, and a third-party including all Documents (including letters of intent, term sheets, or security agreements) and Communications, including communications among counsel for the same.

45. Any Documents or Communications in Your possession, control, or custody concerning negotiations and transactions between You, Ranieri, and the Debtor, including all Documents (including funding summaries and valuations for each fund, loan

14

agreements, service agreements, licensing agreements, invoices, and capital tables) and Communications, including communications among counsel for the same. This request includes the history of relationship and status of deliverables and any contract terminating such history.

46. Any Documents or Communications in Your possession, control, or custody concerning Your outstanding obligations to the Debtor, including all Documents (including invoices, financial statements, receivable notes, receipts, or wire transfers) and Communications, including communications among counsel for the same.

47. Any Documents or Communications in Your possession, control, or custody concerning Ranieri's outstanding obligations to the Debtor, including all Documents (including invoices, financial statements, receivable notes, receipts, or wire transfers) and Communications, including communications among counsel for the same. This request includes Information regarding the $160,0000 in written off accounts receivables and other work which appears to be have been performed by the Debtor, but not billed to Ranieri.

48. Any Documents or Communications in Your possession, control, or custody concerning Your outstanding obligations to LMF, Morse, or Ranieri, including all Documents (including invoices, financial statements, receivable notes, receipts, or wire transfers) and Communications, including communications among counsel for the same.

V. **_Corporate Governance_**

49. Any Documents or Communications in Your possession, control, or custody concerning Your personal or professional dealings with (a) LMF, (b) Morse, (c) Ranieri, or (d) Odell Girton Siegel LLC, within and outside of Your capacity as a representative of the Debtor.

50. Any Documents or Communications in Your possession, control, or custody concerning Mr. Smith's personal or professional dealings with (a) Morse or (b) Odell Girton Siegel LLC, within and outside of his capacity as a representative of the Debtor.

51. Any Documents or Communications in Your possession, control, or custody concerning Shivan Govindan's personal or professional dealings with Morse, within and outside of his capacity as a representative of the Debtor. This request includes Information regarding the letter of intent the Debtor entered with Morse in 2023 regarding a possible debtor-in-possession loan and purchase.

52. Any Documents or Communication in Your possession, control, or custody concerning Mr. Smith's personnel file.

53. Any Documents or Communications in Your possession, control, or custody concerning the replacement of Mr. Smith as Chief Executive Offer of the Debtor. This request includes Information regarding why Mr. Smith was being replaced and Mr. Smith's role/involvement in finding his replacement.

15

54. Any Documents or Communications in Your possession, control, or custody concerning the placement of the chief restructuring officer by the Debtor and LMF, including all Documents (including other resumes reviewed, board resolutions, and fee comparisons) and Communications, including communications among counsel for the same.