**MORRISON COHEN LLP**
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708
Joseph T. Moldovan, Esq.
Heath D. Rosenblat, Esq.
Dawn R. Sudama, Esq.

*Special Litigation Counsel for the Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | |
|---|---|
| In re : | Chapter 7 |
| : | |
| SYMBIONT.IO, LLC, : | Case No. 22-11620 (PB) |
| : | |
| Debtor. : | |
---------------------------------------------------------------x
| | |
|---|---|
| Yann Geron, as Chapter 7 Trustee of : | |
| SYMBIONT.IO, LLC, : | |
| Plaintiff, : | Adv. P. No. 25-_____ (PB) |
| v. : | |
| DUNCAN NIEDERAUER, : | |
| Defendant. : | |
---------------------------------------------------------------x

## TRUSTEE'S COMPLAINT AGAINST DUNCAN NIEDERAUER

Yann Geron ("**Trustee**"), the chapter 7 trustee of the estate of Symbiont.io, LLC ("**Debtor**") and plaintiff in the above-captioned adversary proceeding (this "**Adversary Proceeding**"), by and through his special litigation counsel, Morrison Cohen LLP, as and for his complaint (this "**Complaint**") against defendant Duncan Niederauer ("**Niederauer**," together with the Trustee, "**Parties**"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action against Defendant Duncan Niederauer. Niederauer was a director on the Debtor's board of directors. Prior discovery in the chapter 11 phase of this bankruptcy

proceeding revealed that Niederauer abused his position as a director. Rather than faithfully performing his duties as a director, Niederauer improperly accepted transferred funds from the Debtor before the bankruptcy filing for his own personal benefit.

2. This Adversary Proceeding is brought to avoid and recover from Niederauer the damages the Debtor and its creditors suffered as a result of Niederauer's preferential or fraudulent transfers, as well as his failure to faithfully and diligently perform his duties as the Debtor's director.

## BACKGROUND AND THE PARTIES

3. The Trustee, Yann Geron, is the chapter 7 trustee of the Debtor's bankruptcy estate.

4. On December 1, 2022 ("**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (this "**Court**").

5. On June 6, 2023 ("**Conversion Date**"), upon motion of the United States Trustee, the Debtor's case was converted to a case under chapter 7 of the Bankruptcy Code. On June 7, 2023, Yann Geron was appointed interim chapter 7 trustee of the Debtor's estate. The Trustee has since qualified as the permanent chapter 7 trustee of the Debtor's estate and is currently serving in that capacity.

6. Upon information and belief, the Debtor is a Delaware limited liability company based in New York. The Debtor, upon information and belief, worked with its clients to build and run decentralized applications involving the blockchain, called "smart contracts," that permitted financial institutions to use the blockchain to create more robust and secure records of its financial transactions. Moreover, upon information and belief, prior to the Petition Date, the Debtor was a market-leading smart contracts platform whose technology was used in capital markets.

2

7. Niederauer was a director of Debtor until the Conversion Date. Upon information and belief, Niederauer is a resident of the State of New York.

8. At all relevant times concerning this Complaint, Niederauer was a director of the Debtor.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this Adversary Proceeding by virtue of 28 U.S.C. §§ 157 (a), 1334(b), and the *Standing Order of Referral of Cases to Bankruptcy Judges* of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984.

10. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) in that this Adversary Proceeding asserts causes of action arising in or arising under the above-captioned chapter 7 proceeding, *In re Symbiont.io, LLC,* Case No. 22-11620 (PB). In the alternative, this Adversary Proceeding is related to the above-captioned chapter 7 proceeding.

11. This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**").

12. Venue for this Adversary Proceeding is proper in this Court under 28 U.S.C. § 1409(a), as this Adversary Proceeding is commenced in the district in which the above-captioned bankruptcy case is pending.

13. The Trustee consents to the entry of final orders or judgments by this Court.

## FACTUAL ALLEGATIONS

**A.  Relevant Procedural Background**

14. A review of the Debtor's books and records and other materials of the Debtor, as well as voluntary information provided by cooperating third-parties, revealed that the Trustee may,

3

under various legal theories and the Bankruptcy Code, possess claims against Niederauer, certain individuals, and other entities.

15. On September 16, 2024, the Trustee submitted to the Court an *Omnibus Ex-Parte Application for an Order Pursuant to Federal Bankruptcy Rule 2004* ("**Application**") [ECF No. 121] seeking discovery for the purpose of investigating possible estate claims.

16. By order dated September 18, 2024 ("**2004 Order**") [ECF No. 120], the Court granted the Application. The 2004 Order required Niederauer to appear for an oral examination and to produce all responsive documents requested by a date provided for in a subpoena ("**2004 Subpoena**") under Bankruptcy Rule 2004. On September 19, 2024, the Trustee served a 2004 Subpoena on Niederauer in accordance with the Bankruptcy Rules.

17. By *Stipulation Tolling Trustee's Time to Commence Certain Claims*, dated November 26, 2024, the Trustee and Niederauer, by and through their counsels, agreed to an extension and adjournment of the dates set out in the 2004 Subpoena for both production and examination, and to an extension of the period within which the Trustee may bring claims against Niederauer to and including April 30, 2025.

18. The Trustee and Niederauer, by and through counsel, subsequently and timely extended the tolling discovery periods so that: (a) the Trustee may bring claims against Niederauer to and including October 17, 2025; (b) Niederauer was to produce documents on September 2, 2025; and (c) Niederauer would sit for an examination at a time agreed to by the Parties no later than September 23, 2025.

4

**B.      Niederauer's Role as a Director and Insider of the Debtor**

19.     Niederauer was a director on the Debtor's board.

20.     Upon information and belief, Niederauer was a director of the Debtor's board from 2020—possibly earlier—until the Conversion Date.

21.     The Trustee conducted reasonable due diligence into Niederauer's role as director, including reviewing the Debtor's communications and speaking to numerous examinees pursuant to the 2004 Order. After reviewing extensive electronic communications and other documents, as well as information contained from numerous interviews, it appears that Niederauer, as a director, advised the Debtor on material decisions regarding the Debtor's finances, operations, product management, and other business needs and opportunities.

22.     Niederauer, rather than faithfully perform his duties as a director of the Debtor to advise, monitor, and approve non-insider transactions in the best interest of the Debtor, he allowed for and accepted corporate assets from the Debtor to be diverted to himself for his own personal benefit.

**C.      The Debtor's Financial Troubles and Niederauer's Knowledge of Same**

23.     Upon information and belief, the Debtor was not properly funded, regularly undercapitalized, and its corporate assets were mismanaged for years leading up to the Petition Date.

24.     The Debtor's consolidated audited financial statements for the years ended December 31, 2019, 2020, and 2021 ("**Audit Reports**") were prepared with the assumption that the Debtor operated as a going concern. The Debtor, however, experienced recurring losses from operations, accumulated a deficit, and the Audit Reports stated that substantial doubt existed about

the Debtor's ability to continue as a going concern. A going concern opinion was issued for the Debtor in 2019, 2020, and 2021.

25.     The 2019 and 2020 Audit Reports showed the Debtor's assets were valued above $5 million dollars, but the Debtor's pre-tax operating loss was over $20 million dollars. For 2021, the Debtor's pre-tax assets included a $53 million dollar settlement from Ipreo Holdings, LLC ("**Ipreo**") to end a long-standing litigation that began in 2019 ("**Ipreo Settlement**"), which valued the Debtor's assets at approximately $51 million and the pre-tax loss at approximately $19 million.

26.     Upon information and belief, due to the fee arrangement between the Debtor and the firm that financed the Ipreo litigation, TRGP Capital ("**TRGP**"), a significant portion of the Ipreo Settlement proceeds went to TRGP; not the Debtor.

27.     Upon information and belief, after the net proceeds of the Ipreo Settlement were collected by the Debtor, such proceeds were distributed to various insiders (*i.e.*, officers, directors, and equity holders), including Niederauer, despite the Debtor needing significant funding to operate.

28.     Upon information and belief, before and after the Ipreo Settlement, Niederauer communicated with various directors regarding the immense financial constraints faced by the Debtor and the need for third-party funding necessary for the Debtor to continue operating. Notwithstanding the Debtor's dire financial situation, Niederauer still accepted the diverted Ipreo Settlement proceeds for his own benefit, rather than leaving or returning the funds to pay the Debtor's ordinary-operating expenses.

29. Further evidence of the Debtor's financial troubles was reflected in the Debtor's bankruptcy filing materials. Upon filing for bankruptcy, it was clear that the Debtor had been unable to fulfill its operational and funding needs for several years.

30. The mismanagement of the Ipreo Settlement proceeds, as well as the questionable business practices, ultimately led to the Debtor filing for chapter 11 protection.

**D.    The Avoidable Transfers**

31. Within the one-year period before the Petition Date, Niederauer—an insider—was the initial transferee of: (a) $200,000 for an alleged loan capital repayment ("**Alleged Loan**") and (b) $18,363.56 for interest on the Alleged Loan ("**Alleged Interest**," together with the Alleged Loan, "**Avoidable Transfers**").

32. The Avoidable Transfers are listed as a lump sum payment in response to question 30.1 on the Debtor's Statement of Financial Affairs ("**Debtor's SOFA**") [ECF No. 8], which was filed on December 14, 2022. Upon information and belief, Niederauer acknowledged, through reviewing and approving the filing of the Debtor's SOFA in connection with the board's approval of the Debtor's bankruptcy filing, that he was the recipient of the Avoidable Transfers.

33. The Trustee conducted reasonable due diligence into the Avoidable Transfers, including a review of the Debtor's books and records and other relevant information and documents.

34. The only mention of loans between any officer and the Debtor was an unsubstantiated passing reference in the Audit Reports. No actual loan documentation has been located or produced that evidences any loan transactions between the Debtor and any of its officers or directors. As such, there is nothing supporting that Niederauer loaned the Debtor $200,000, nor that he is entitled to any interest, including the $18,363.56 in interest that he was paid.

7

## COUNT I
## PREFERENCE CLAIM UNDER 11 U.S.C. § 547

35. The Trustee restates and re-alleges each and every allegation contained in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. The Trustee conducted reasonable due diligence into the Avoidable Transfers, including a review of the Debtor's books and records and other relevant information and documents. The Trustee also conducted reasonable due diligence into known or reasonably knowable affirmative defenses that Niederauer could assert, including under section 547(c) of the Bankruptcy Code.

37. The Debtor made the Avoidable Transfers that total no less than $218,363.56.

38. Each Avoidable Transfer was a transfer of the Debtor's property.

39. Each Avoidable Transfer was made to or for the benefit of Niederauer.

40. Upon information and belief, at the time of each Avoidable Transfer, Niederauer was an alleged creditor of the Debtor within the meaning of section 101(10) of the Bankruptcy Code. *See* ECF No. 7. Niederauer received the Avoidable Transfers, or alternatively the Avoidable Transfers were made for his benefit.

41. At all relevant times, Niederauer was a director of the Debtor and; thus, an insider of the Debtor under section 101(31)(B)(i) of the Bankruptcy Code.

42. Each of the Avoidable Transfers was made within one-year of the Petition Date and was made while the Debtor was insolvent.

43. Upon information and belief, each of the Avoidable Transfers was made on account of a repayment request by Niederauer and was made outside the ordinary course of the Debtor's business practices.

44. The Avoidable Transfers, if not avoided, would allow Niederauer to receive more than he would receive under chapter 7 of the Bankruptcy Code, if the Avoidable Transfers had not been made. Niederauer received the Avoidable Transfers on account of the antecedent debt referenced herein, to the extent provided by the provisions of the Bankruptcy Code.

45. As of the date of this Complaint, Niederauer has not returned the Avoidable Transfers to the Debtor.

46. The Trustee is, under section 547 of the Bankruptcy Code, entitled to an order and judgment avoiding and, under section 550 of the Bankruptcy Code, recovering the Avoidable Transfers.

## COUNT II
## ACTUAL INTENT FRAUDULENT TRANSFER CLAIM UNDER 11 U.S.C. § 548(A)

47. The Trustee restates and re-alleges each and every allegation contained in paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48. On or about December 28, 2021, the Debtor paid Niederauer $200,000 in satisfaction of an alleged loan to the Debtor from Niederauer. On January 10, 2022, the Debtor paid Niederauer $18,363.56 representing accrued interest on the purported loan that Niederauer allegedly provided to the Debtor. These payments were made using the Ipreo Settlement proceeds, which were the Debtor's property.

49. Upon information and belief, the Avoidable Transfers are actual intent fraudulent transfers under the badges of fraud because: (a) Niederauer was an insider of the Debtor; (b) there was no fair consideration or reasonably equivalent value for the transfers (described in more detail below); (c) the Debtor was (i) insolvent, (ii) was engaged in a business or a transaction for which any property remaining with the Debtor was an unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to repay as

9

such debts matured; (d) a significant portion of the Debtor's limited estate was transferred as a result of these payments; (e) as a director Niederauer had control and dominion over the Debtor and Niederauer was the sole beneficiary of those transfers; and (f) the transactions, although reflected on the Debtor's SOFA, were not disclosed to non-insiders and creditors until the Debtor's bankruptcy filing.

50. Upon information and belief, Niederauer was paid $200,000 in satisfaction of an alleged loan made to the Debtor, plus $18,363.56 for interest on that alleged loan (*i.e.* the Avoidable Transfers), each made within a year of the Petition Date. The Avoidable Transfers were made while the Debtor was insolvent, engaged in a business or a transaction for which any property remaining with the Debtor was an unreasonably small capital, or intended to incur, or believed that it would incur debts that would be beyond the Debtor's ability to repay as such debts matured.

51. The Debtor received no reasonably equivalent value or fair consideration in exchange for the Avoidable Transfers.

52. The Trustee conducted reasonable due diligence into the Avoidable Transfers, including a review of the Debtor's books and records and other relevant information and documents.

53. The only mention of loans between any officer and the Debtor was an undocumented and unsubstantiated passing reference in the Audit Reports. No actual loan documentation has been located or produced that evidences any loan transactions between the Debtor and any of its officers or directors. There is no evidence that Niederauer loaned the Debtor $200,000, nor that he is entitled to interest of $18,363.56.

54. Each of the Avoidable Transfers is avoidable by creditors who hold allowable unsecured claims, including creditors who were creditors before the transfers. *See* ECF No. 7.

10

55. Therefore, the Trustee is entitled to an order and judgment avoiding, under section 548(A) of the Bankruptcy Code and applicable law, and recovering, under section 550 of the Bankruptcy Code, the Avoidable Transfers.

### COUNT III
### CONSTRUCTIVE FRAUDULENT TRANSFER CLAIM UNDER 11 U.S.C. § 548(B)

56. The Trustee restates and re-alleges each and every allegation contained in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. On or about December 28, 2021, the Debtor paid Niederauer $200,000 in satisfaction of an alleged loan to the Debtor from Niederauer. On January 10, 2022, the Debtor paid Niederauer $18,363.56 representing accrued interest on the purported loan that Niederauer allegedly provided to the Debtor. These payments were made using the Ipreo Settlement proceeds, which were the Debtor's property.

58. Upon information and belief, Niederauer was paid $200,000 in satisfaction of an alleged loan made to the Debtor, plus $18,363.56 for interest on that alleged loan (*i.e.* the Avoidable Transfers), each made within a year of the Petition Date. The Avoidable Transfers were made while the Debtor was insolvent, engaged in a business or a transaction for which any property remaining with the Debtor was an unreasonably small capital, or intended to incur, or believed that it would incur debts that would be beyond the Debtor's ability to repay as such debts matured.

59. The Debtor received no reasonably equivalent value or fair consideration in exchange for the Avoidable Transfers.

60. The Trustee conducted reasonable due diligence into the Avoidable Transfers, including a review of the Debtor's books and records and other relevant information and documents. The only mention of loans between any officer and the Debtor was an unsubstantiated and undocumented passing reference in the Audit Reports. No actual loan documentation has been

located or produced that evidences any loan transactions between the Debtor and any of its officers or directors. There is no evidence that Niederauer loaned the Debtor $200,000, nor that he is entitled to interest of $18,363.56.

61. Each of the Avoidable Transfers is avoidable by creditors who hold allowable unsecured claims, including creditors who were creditors before the transfers. *See* ECF No. 7.

62. Therefore, the Trustee is entitled to an order and judgment avoiding, under section 548(B) of the Bankruptcy Code, and recovering, under section 550 of the Bankruptcy Code, the Avoidable Transfers.

## COUNT IV
## FRAUDULENT TRANSFER CLAIM UNDER
## 11 U.S.C. § 544(B) AND THE APPLICABLE STATE LAW

63. The Trustee restates and re-alleges each and every allegation contained in paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. Under section 544(b) of the Bankruptcy Code, the Trustee is authorized to avoid any transfer of an interest in property that is voidable under applicable law by a creditor holding an allowable unsecured claim. 11 U.S.C. §544. Consequently, fraudulent or otherwise voidable transfers are avoidable pursuant to section 544(b) of the Bankruptcy Code and other applicable law, including the relevant fraudulent or voidable transfer laws as enacted in the state of New York.

65. On or about December 28, 2021, the Debtor paid Niederauer $200,000 in satisfaction of an alleged loan to the Debtor from Niederauer. On January 10, 2022, the Debtor paid Niederauer $18,363.56 representing accrued interest on the purported loan that Niederauer allegedly provided to the Debtor. These payments were made using the Ipreo Settlement proceeds, which were the Debtor's property.

12

66. Upon information and belief, the Avoidable Transfers are actual intent fraudulent transfers under the badges of fraud because: (a) Niederauer was an insider of the Debtor; (b) there was no fair consideration or reasonably equivalent value for the transfers (described in more detail below); (c) the Debtor was (i) insolvent, (ii) was engaged in a business or a transaction for which any property remaining with the Debtor was an unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to repay as such debts matured; (d) a significant portion of the Debtor's limited estate was transferred as a result of these payments; (e) as a director Niederauer had control and dominion over the Debtor and Niederauer was the sole beneficiary of those transfers; and (f) the transactions, although reflected on the Debtor's SOFA, were not disclosed to non-insiders and creditors until the bankruptcy filing.

67. Upon information and belief, Niederauer was paid $200,000 in satisfaction of an alleged loan made to the Debtor, plus $18,363.56 for interest on that alleged loan (*i.e.* the Avoidable Transfers), each made within a year of the Petition Date. The Avoidable Transfers were made while the Debtor was insolvent, engaged in a business or a transaction for which any property remaining with the Debtor was an unreasonably small capital, or intended to incur, or believed that it would incur debts that would be beyond the Debtor's ability to repay as such debts matured.

68. The Debtor received no reasonably equivalent value or fair consideration in exchange for the Avoidable Transfers.

69. The Trustee conducted reasonable due diligence into the Avoidable Transfers, including a review of the Debtor's books and records and other relevant information and documents.

70. The only mention of loans between any officer and the Debtor was an unsubstantiated and undocumented passing reference in the Audit Reports. No actual loan documentation has been located or produced that evidences any loan transactions between the Debtor and any of its officers or directors. There is no evidence that Niederauer loaned the Debtor $200,000, nor that he is entitled to interest of $18,363.56.

71. Each of the Avoidable Transfers is avoidable by creditors who hold allowable unsecured claims, including creditors who were creditors before the transfers. *See* ECF No. 7.

72. Therefore, the Trustee is, in the alternative with respect to the Avoidable Transfers, entitled to an order and judgment avoiding, under section 544 of the Bankruptcy Code and applicable law, and recovering, under section 550 of the Bankruptcy Code, the Avoidable Transfers.

## COUNT V
## RECOVERY OF TRANFERS UNDER 11 U.S.C. § 550

73. The Trustee restates and re-alleges each and every allegation contained in paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74. As set out in this Complaint, the Trustee, pursuant to sections 544, 547, and 548 of the Bankruptcy Code, as applicable, is entitled to avoid the Avoidable Transfers. Niederauer is the initial, immediate, or mediate transferee of the Avoidable Transfers for whose benefit such transfers were made. Accordingly, the Trustee is entitled, pursuant to sections 547 and 550 of the Bankruptcy Code, to the return of the Debtor's property totaling no less than $218,363.56, ***plus*** interest at the maximum legal rate and costs to the fullest extent allowed by applicable law.

75. Alternatively, Niederauer's request that the Debtor pay him $200,000 in satisfaction of an alleged loan, plus the $18,363.56 in purported interest were either (or both) actual and constructive fraudulent transfers avoidable under sections 548 and section 544 of the

14

Bankruptcy Code, as well as applicable state law. Accordingly, the Trustee is entitled to, pursuant to sections 544, 547, and 548 of the Bankruptcy Code, receive the return of the Debtor's property in an amount no less than $218,363.56, **plus** interest at the maximum legal rate and costs to the fullest extent allowed by applicable law.

## COUNT VI
## BREACHES OF FIDUCIARY DUTIES OF LOYALTY AND CARE

76. The Trustee restates and re-alleges each and every allegation contained in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77. As a director of the Debtor, Niederauer owed fiduciary duties of due care and loyalty to the Debtor. Niederauer was also required to discharge his duties in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner reasonably believed to be in the best interests of the Debtor.

78. Niederauer breached his fiduciary duty of loyalty, by, among other things, accepting the Debtor's corporate assets (*i.e.*, the Avoidable Transfers) to himself, when knowing that the Debtor was insolvent and had other creditors, including the employee payroll for non-officer employees.

79. Niederauer knew or should have known that his acts as described in this Complaint were in breach, abdication, and/or conscious disregard of his responsibilities, fiduciary duties of loyalty, good faith, and care, and not in the best interests of the Debtor, and as a result, Niederauer breached his duties by failing to discharge such fiduciary obligations in good faith.

80. As a direct and proximate result of Niederauer's breaches, including the misappropriation of the Ipreo Settlement proceeds for insiders and himself, the Debtor's estate was depleted of assets that should have been used to sustain operations and pay creditors, resulting in increased claims and the ultimate collapse of the Debtor's business.

15

81. These breaches of fiduciary duty by Niederauer proximately caused the Debtor to suffer injury, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Niederauer and grant the following relief:

(a) Avoid and recover the Avoidable Transfers (*i.e.*, no less than $218,363.56) as preferential transfers pursuant to sections 547 and 550 of the Bankruptcy Code, ***plus*** interest at the maximum legal rate and costs to the fullest extent allowed by applicable law;

(b) Alternatively, avoid and recover Avoidable Transfers (*i.e.*, no less than $218,363.56) as actual intent fraudulent transfers under section 548(A) of the Bankruptcy Code, ***plus*** interest at the maximum legal rate and costs to the fullest extent allowed by applicable law;

(c) Alternatively, avoid and recover Avoidable Transfers (*i.e.*, no less than $218,363.56) as constructive fraudulent transfers under section 548(B) of the Bankruptcy Code, ***plus*** interest at the maximum legal rate and costs to the fullest extent allowed by applicable law;

(d) Alternatively, avoid and recover Avoidable Transfers (*i.e.*, no less than $218,363.56) as actual intent fraudulent transfers or constructive fraudulent transfers under sections 544(b) and 550 of the Bankruptcy Code and applicable state law, ***plus*** interest at the maximum legal rate and costs to the fullest extent allowed by applicable law;

(e) Award of an amount to be proven at trial on account of damages that were suffered by the Debtor, its creditors, and its bankruptcy estate as a result of Niederauer breaching his fiduciary duties, ***plus*** interest, costs and attorneys' fees, and such other equitable relief as may be just and proper; and

(f) Granting the Trustee such other and further relief as this Court deems just and proper under the circumstances.

[*Signature Page Follows*]

Dated:　New York, New York
　　　　October 16, 2025

**MORRISON COHEN LLP**

By: */s/ Heath D. Rosenblat*
　　Joseph T. Moldovan, Esq.
　　Heath D. Rosenblat, Esq.
　　Dawn R. Sudama, Esq.

909 Third Avenue, 27th Floor
New York, New York  10022
(212) 735-8600
jmoldovan@morrisoncohen.com
hrosenblat@morrisoncohen.com
dsudama@morrisoncohen.com

*Special Litigation Counsel for Yann Geron,
Chapter 7 Trustee*